**Vincent KERR, Plaintiff,**

v.

**John QUINN, et al., Defendants.**

**Civ. A. No. N–78–378.**

United States District Court, D. Connecticut.

March 15, 1982.

Alfred J. Onorato, New Haven, Conn., for plaintiff.

William P. Meehan, Asst. Town Atty., Hamden, Conn., Harold C. Donegan, Sperandeo, Weinstein & Donegan, New Haven, Conn., for defendants.

RULING ON DEFENDANTS' MOTION FOR A NEW TRIAL and PLAINTIFF'S APPLICATION FOR ATTORNEY'S FEES

ZAMPANO, District Judge.

In this civil rights action, the defendants John Quinn and Joseph Ruggiero, police officers of the Town of Hamden, move for a new trial on the grounds that the jury verdicts were against the weight of the evidence and were grossly excessive. Also before the Court is plaintiff's application for an award of attorney's fees.

I

On December 4, 1976, the plaintiff Vincent Kerr was involved in a motor vehicle accident in the Town of Hamden when his automobile skidded through a stop sign and collided with another car operated by a Mr. Santillo. At the time, the roads were icy and driving conditions were hazardous. The plaintiff accepted full responsibility for the collision and apologized to Mr. Santillo for the damage caused. Within a short time, Officers Quinn and Ruggiero arrived on the scene to investigate the accident and Supernumerary Officer Sequino was assigned to direct traffic.

During the course of the investigation, one of the officers asked the plaintiff to complete an Accident Information Exchange Form which contained a series of questions, including several relating to insurance coverage. At this point, the accounts of the officers and the plaintiff diverge. The officers testified that the plaintiff refused to complete the form, became loud and boisterous, swore at the officers, and appeared drunk. Thereupon, he was arrested for operating a motor vehicle under the influence of alcohol, breach of the peace, interfering with a police officer, im-proper turn and violation of a stop sign. After being handcuffed and placed in a police car without incident, the plaintiff was driven to the police station by Officer Ruggiero. On the way to the station, the plaintiff threatened Officer Ruggiero, which resulted in a charge of threatening a police officer being added to the other offenses.

Mr. Kerr's rendition of events was substantially different. He testified that he courteously explained to the officers that he was unable to fill out the form because he was uncertain of the name and address of his insurer. Both officers then became incensed, swore at him, and placed him under arrest. Thereafter he was handcuffed, kicked in the groin by Officer Ruggiero, thrown into the squad car, and taken to the police station where he was detained for several hours.

Subsequently, all the charges, except driving under the influence, were disposed of either by nolles or by lack of prosecution. After a jury trial, the plaintiff was acquitted of the drunk driving charge.

Mr. Kerr then commenced the instant civil rights action against both officers, pursuant to 42 U.S.C. § 1983. On October 9, 1981, after a four-day trial, the jury returned verdicts in favor of the plaintiff on his claims that he was falsely arrested and that a false police report was submitted on his conduct. Compensatory damages of $20,000 and punitive damages of $10,000 were assessed by the jury against each officer, for a total recovery of $60,000. However, the jury found against the plaintiff on his contention that the police officers had used excessive force in arresting him.

I. SUFFICIENCY OF THE EVIDENCE

■ The standard to be applied by a trial court in passing on a motion to set aside a verdict as against the weight of the evidence is succinctly set forth in 6A *J. Moore, Federal Practice* ¶ 59.08[5] at 59–160 thru 161 (2d ed. 1981) (footnotes omitted):

The trial judge, exercising a mature discretion, should view the verdict in the

overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous verdict. The judge's duty is essentially to see that there is no miscarriage of justice.

This test was expressly approved by the Second Circuit in *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2 Cir. 1978). See also *Jacobs v. Goodspeed*, 180 Conn. 415, 416–17, 429 A.2d 915 (1980).

Applying this standard, the Court is satisfied that there was ample evidence to support the jury's findings on the issues of false arrest and false report. At the time of the incident Mr. Kerr was 37 years old and gainfully employed for many years as an electronic technician. He had never been arrested before and testified without contradiction that he did not drink liquor due to a medical problem. With respect to each of the charges placed against him on the night in question, he proffered convincing testimony that the defendants lacked probable cause to arrest him. The most glaring omission by the police officers was their unexplained failure to administer, or even attempt to administer, the usual and customary police sobriety tests either at the scene or later at the police station. Rather, the officers based probable cause for the drunk driving arrest on their observations that the plaintiff was "loud and boisterous," had difficulty in expressing himself, and was generally uncooperative.

Aside from the plaintiff's own testimony, there was substantial evidence to contradict the defendants' account of the incident. Mr. Santillo, obviously a disinterested third party, testified the plaintiff was soft-spoken, courteous, and apologetic. At no time did Mr. Santillo hear the plaintiff swear at or interfere with the officers. It is also significant that Supernumerary Officer Sequino, who was nearby directing traffic, was unable to corroborate the testimony of his fellow officers in material respects. In any event, even assuming the plaintiff did display the characteristics mentioned by the defendants, the slight aberrations hardly warranted the conclusion that the plaintiff's driving was impaired by the influence of alcohol. Finally, the facts which support the jury's finding of false arrest also support their finding that the officers' official report of the incident was false.

## II. COMPENSATORY DAMAGES

■ In deciding a motion for a new trial on the ground that the verdict is excessive, just as with a motion for a new trial based on insufficiency of the evidence, the Court must be wary of substituting its judgment for that of the jury. 6A *J. Moore*, supra, ¶ 59.08[6] at 59–169. Generally, a jury verdict as to damages will not be set aside unless it was so unreasonably high as to be unconscionable or "shock the conscience." *Zarcone v. Perry*, 572 F.2d 52, 56 (2 Cir. 1978); *Bevevino v. Saydjari*, supra, 574 F.2d at 688; *Perfect Fit Industries v. Acme Quilting Co.*, 494 F.Supp. 505, 508 (S.D.N.Y. 1980); *Birgel v. Heintz*, 163 Conn. 23, 28, 301 A.2d 249 (1972).

■ Mindful of the "hands-off" policy toward adjusting jury verdicts and the inherent difficulty in placing a dollar value on the deprivation of civil rights, The Court nevertheless is convinced that the award of $40,000 in compensatory damages in the present case crosses the line from generous to excessive.

At the outset, it is important to note that the jury rejected plaintiff's claim that the defendants used excessive force when they arrested him. Therefore, it follows that the plaintiff's evidence relating to his alleged back injury, his physical pain and suffering, the medical expenses, and almost all of his lost wages must be disregarded in estimating a fair award in this case. The only out-of-pocket expenses that properly may be put on the scale are the $750 attorney's fee for representation in the state criminal court and a few days of lost wages for appearances in that court. At most these expenses would not exceed $1,000. Undoubtedly the plaintiff suffered some emo-

tional distress from the arrest and detention; yet, the trial record sheds little light on the extent of any emotional or psychological impact the false arrest had upon the plaintiff. Under these circumstances, it must be assumed that the hurt from humiliation and embarrassment was not substantial.

While verdicts in similar civil rights cases should not be regarded as a cap on the amount of damages which a jury may properly grant, reference to such awards is instructive in deciding whether a particular verdict is excessive. In *Velikonja v. Fabrizi*, Civil No. B–574 (D.Conn. Feb. 17, 1977), a Connecticut jury assessed compensatory damages of $1,500 and punitive damages of $3,500 for the defendant's illegal arrest and detention of a 22 year old male plaintiff. More recently, in another civil rights action in this District, a jury awarded an elderly female plaintiff a total of $10,000 as compensatory damages and $5,000 as punitive damages for an illegal arrest and detention by two defendant police officers. *Gagnon v. Ball*, Civil No. N–78–454 (D.Conn. Nov. 18, 1981). See also *Rhoads v. Horvat*, 270 F.Supp. 307 (D.Colo.1967), wherein the court held that $5,000 in compensatory damages and $2,500 in punitive damages were adequate damages for a wrongful detention of 35 to 45 minutes, and accordingly ordered the plaintiff to remit all sums above those amounts.

It is true that, even in the absence of excessive force, a sizable jury award may be justified. However, in such cases the conduct on the part of state officials was more shocking and egregious than in the case *sub judice.* See, *Zarcone v. Perry*, supra, 572 F.2d 52 (As part of a veritable "star chamber proceeding," a coffee vendor was handcuffed, threatened, and paraded through courthouse for serving a county judge "putrid" coffee).

In the instant case, it is the opinion of the Court that the verdicts under the facts presented at trial were excessive. Accordingly, the Court orders that a total of $10,000 of the $40,000 compensatory damage award be remitted, i.e., $5,000 of the amount assessed against Officer Ruggiero and $5,000 of the amount assessed against Officer Quinn.

## III. PUNITIVE DAMAGES

As with compensatory damages, a trial court should not disturb a jury's award of punitive damages unless the record is devoid of evidence to support it or unless the amount shocks the judicial conscience. See, e.g., *Zarcone v. Perry*, supra, 572 F.2d at 56–57; *Perfect Fit Industries v. Acme Quilting Company*, supra, 494 F.Supp. at 509.

There is little doubt that the testimony adduced at trial to support the requisite inferences of "malice," "oppression," and "wanton misconduct" on the part of the police officers in this case was meager. Yet, recognizing the broad discretion traditionally accorded the jury's appraisal of the facts on the issue of punitive damages, see, e.g., *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), this Court is unable to conclude that the evidence was insufficient to tip the scales "ever so slightly" in favor of the plaintiff on his claim that the defendants' conduct was willful. See *Stolberg v. Members of Board of Trustees*, 474 F.2d 485, 489 (2 Cir. 1973).

However, the Court is of the opinion that the award of $20,000 to punish the wrongdoers here or to serve as a deterrent to others must be deemed to be an "overkill." The acts of the defendants may be construed to indicate a reckless or callous disregard of the rights of the plaintiff to some degree, but there was no evidence that the police officers bore the plaintiff any personal ill will, or reacted to a grudge against the plaintiff, or harbored a prejudice against him based on his race, color, or creed. Under these circumstances, an assessment that $20,000 be awarded for punitive damages constitutes a verdict so grossly excessive "that it would be a miscarriage of justice to permit it to stand." *Dagnello v. Long Island Rail Road Co.*, 289 F.2d 797, 806 (2 Cir. 1961). Accordingly, the Court

finds that an aggregate punitive recovery of $14,000 will more than adequately serve to deter these officers and others from engaging in similar conduct, and orders that a remittitur of $3,000 be filed by the plaintiff with respect to each defendant.

## IV. APPLICATION FOR ATTORNEY'S FEES

■ Also before the Court is an application for attorney's fees filed by plaintiff's counsel in the amount of $11,313.50, representing compensation at $125 per hour for the 90.50 hours he devoted to this case. Two hearings were held on the issue at which time the Court heard extensive arguments on the feasibility of an award under the circumstances of this case.

Attorney Alfred J. Onorato, a former prosecutor and skilled litigator, was privately retained on a contingent fee basis by the plaintiff. He represented the plaintiff with dedication, competence, and in a highly professional manner. Neither the quality of his representation nor the time attributed to representation is challenged by the defendants. The main issue presented is whether any award is warranted under the principles enunciated in *Zarcone v. Perry*, 581 F.2d 1039, 1042–44 (2 Cir. 1978), cert. denied, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). See also *Buxton v. Patel*, 595 F.2d 1182, 1185 (9 Cir. 1979).

Ordinarily, a successful plaintiff in a civil rights action will recover an attorney's fee as part of costs pursuant to 42 U.S.C. § 1988. Under the so-called *Newman-Northcross* rule, a court should award attorney's fees under the Civil Rights Act unless special circumstances render such an award unjust. *Milwe v. Cavuoto*, 653 F.2d 80, 82 (2 Cir. 1981); *Zarcone v. Perry*, supra, 581 F.2d at 1044. The principal factor to be considered on the question of fee shifting is "whether a person in the plaintiff's position would have been deterred or inhibited in seeking to enforce civil rights without an assurance that his attorneys' fees would be paid if he were successful." *Id.*

Applying this standard to the circumstances in the present case, the Court is of the opinion that an attorney's fee should not be awarded. In so ruling, the Court is not influenced by the fact that the plaintiff had the financial resources to retain an attorney on a contingent fee basis. However, it is evident to the Court that this case, like *Zarcone*, had certain strengths that made the prospects for a substantial monetary recovery excellent. Any competent attorney would be inclined to represent Mr. Kerr on a contingent fee arrangement, particularly in view of the following salient features of the case: a well-educated and cultured plaintiff who obviously would make an impressive appearance before a court and jury, a plaintiff who had a fine work record, strong family ties and no history of prior confrontations with police, an incontrovertible police record which attested to the lack of proper and customary police procedures, a transcript of the defendants' testimony under oath in the state criminal trial, which demonstrated almost as a matter of law that the police officers' arrest lacked probable cause, and the availability of a third party witness, Mr. Santillo, who supported Mr. Kerr's version of the incident in several crucial respects. This optimistic view of the merits of plaintiff's case is not due merely to the advantages of hindsight. Prior to trial, the Court recommended a rather high settlement figure for this case in light of verdicts rendered in similar cases in this District and, when the figure was rejected by defendants, cautioned them that a "substantial recovery" was probable.

## V. SUMMARY OF ORDERS

For the reasons stated, it is

ORDERED:

1. That the verdicts of the jury in favor of the plaintiff, Vincent Kerr, and the judgments entered thereon be set aside and a new trial granted unless within 20 days of the date hereof, the plaintiff in conformity with this opinion, files remittiturs of all sums in excess of $30,000 compensatory damages and $14,000 punitive damages;

2. That the plaintiff's application for attorney's fees is denied, but his motion for costs is granted.