**Melvin SATCHELL, Plaintiff,**

v.

**Chester H. CLARK, Defendant.**

**No. 81 CV 0603.**

United States District Court,
E.D. New York.

Nov. 30, 1989.

---

Proskauer Rose Goetz & Mendelsohn, New York City (Darrell Pastor, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of N.Y., New York City (Tarquin Jay Bromley, Asst. Atty. Gen., Special Litigation Counsel, Litigation Bureau), for defendant.

BARTELS, District Judge.

## DECISION AND ORDER

Plaintiff Melvin Satchell ("Satchell") commenced this action, under 42 U.S.C. § 1983, against various officials of Suffolk County, the New York Department of Correctional Services ("DOCS"), including the defendant Chester Clark ("Clark" or "Defendant"), Director of Inmate Classification and Movement, and the New York State Division of Parole in 1981. In his complaint Satchell alleged violations of his civil rights under the due process and equal protection clauses of the United States Constitution as a result of his unlawful arrest and thirty-one (31) day confinement during November and December of 1980. The other defendants, with the exception of Edmund Walsh ("Walsh"), Supervisor, Interstate Bureau–Division of Parole, were granted summary judgment on the basis of lack of evidence or qualified immunity.

A jury trial commenced on July 10, 1989. Edmund Walsh was dismissed at the close of plaintiff's case but Clark's motion for a directed verdict, pursuant to Rule 50 of the Federal Rules of Civil Procedure, was denied. Jury deliberations began on July 12, 1989, and the jury returned a $150,000 verdict, $100,000 for compensatory damages and $50,000 for punitive damages, in Satchell's favor the same day.

Clark moved for judgment *non obstante veredicto* ("judgment n.o.v.") or, in the alternative, an order setting aside the verdict and granting a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.

## FACTS

This action is based on Suffolk County's failure to timely deliver to DOCS a *Nunc pro tunc* order. The essence of Satchell's complaint is that he was wrongfully incarcerated from November 18, 1980, to December 19, 1980. Initially Satchell alleged a conspiracy among county and state officials to deprive him of his constitutional rights. He subsequently modified his theo-

ry and alleged the unlawful incarceration resulted from a reckless disregard of his constitutional rights.

Originally, the Plaintiff was sentenced by Suffolk County Supreme Court Justice Joseph Jaspan to one and one-half to three years for Possession of Gambling Records in the First Degree ("the original order"). This sentence was to be served concurrently, in federal prison, with a federal sentence Satchell was then serving. On the same day as the original order was issued Justice Jaspan entered a *Nunc pro tunc* order crediting Satchell "for time served from October 25, 1977" on his gambling sentence. On November 22, 1979, Satchell was released from federal custody and placed on federal probation. Although Satchell's state sentence had not expired he was not turned over to the state authorities to serve the balance of his term (approximately 11 months)—thus he was released too early. According to the terms of the original order, Satchell's state sentence expired on June 28, 1981. By virtue of the *Nunc pro tunc* order, however, Satchell's sentence on the state offense expired October 24, 1980.

While he was on federal probation Satchell was arrested in Suffolk County for bank robbery on August 6, 1980, and held in lieu of bail. He posted bail and was released on October 29, 1980, which, according to the *Nunc pro tunc* order, was five days after his sentence for Possession of Gambling Records had expired.

Walsh sent Clark a memorandum on November 6, 1980, which stated, "as far as can be determined from additional material, the subject [Satchell] has a maximum expiration date on his New York State Sentence of June 28, 1981." (Joint Ex. 10). A warrant for Plaintiff's arrest was issued when DOCS learned that he was at liberty. At that time DOCS did not have a copy of the *Nunc pro tunc* order, nor was it aware of its existence. Satchell was then taken into custody on November 18, 1980, by Suffolk County police. Clark certified that the original order under which Satchell was arrested was a "true and exact" copy. (Joint Ex. 11). Satchell verbally protested

to the arresting officers that by virtue of the *Nunc pro tunc* order his sentence for Possession of Gambling Records had expired.

Suffolk County Supreme Court Justice Paul Baisley dismissed Satchell's writ of *habeas corpus* on November 19, 1980, after hearing testimony from Robert DeCarlo, Office of Warrant and Extradition DOCS, regarding the validity of the original order. Although references were made to the *Nunc pro tunc* order neither Satchell nor his attorney produced the order which was filed in the Clerk's Office in the same courthouse.

Satchell was transferred from Ossining Correctional Facility ("Ossining") to Downstate Correctional Facility ("Downstate") on November 24, 1980. Ms. Stanton noted in a memorandum dated November 24, 1980, "[I]n accordance with our telephone conversation we have not attempted to compute [Satchell's] sentence." (Joint Ex. 15). She testified that although it was her duty to compute inmates' prison terms, Clark instructed her not to compute Satchell's sentence.

Satchell immediately began a letter writing campaign to alert authorities to the *Nunc pro tunc* order. On November 27, 1980, and December 1, 1980, he wrote to the "Time Computation Clerk" at Downstate who, as it happens, was Stanton. (Joint Exs. 16 and 17). On December 2, 1980, Satchell addressed a letter directly to Stanton in which he reiterated his claim that his sentence for Possession of Gambling Records had already expired. (Joint Ex. 18).

On December 2, 1980 Stanton wrote Clark and Michael Kernan, Associate Attorney with the Council's Office, enclosing a copy of the November 27th letter from Satchell in which he specifically referred to the *Nunc pro tunc* order and inquiring whether a decision regarding Satchell's sentence had been reached. (Joint Ex. 21). On the same day, she advised Satchell, in writing, that his sentence was being calculated by the Council's Office in Albany and also provided Satchell with the names and ad-

dresses of Clark and Kernan so that he could contact them directly. (Joint Ex. 19).

Clark did not compute Satchell's sentence. An employee in the Department of Inmate Classification and Movement, Richard Middlebrook, computed his sentence without the benefit of the *Nunc pro tunc* order. (Joint Ex. 25). Stanton forwarded Satchell a copy of Middlebrook's calculation on December 5, 1980.

On December 2, 1980, Satchell wrote to Kernan and Middlebrook advising them of the *Nunc pro tunc* order (Joint Exs. 20 and 26), but never communicated directly with Clark. On December 15, 1980, Kernan referred Satchell's complaint back to Stanton noting that he had no information concerning this case. (Joint Ex. 29).

As of December 8, 1980, Satchell's 'folder' had not been sent from Ossining to Downstate. As late as December 16, 1980, Clark had not received the *Nunc pro tunc* order. Clark testified that while he could not specifically recall requesting that Suffolk County forward the *Nunc pro tunc* order, ordinarily, he would have been the person to make such a request. No evidence was offered to demonstrate who made such a request, or how it came to pass that the *Nunc pro tunc* order was ultimately sent to DOCS. Finally, an envelope from the Suffolk County Sheriff's Office, postmarked December 16, 1980, containing the *Nunc pro tunc* order was mailed to Downstate. (Joint Ex. 32). The *Nunc pro tunc* order was valid and Satchell's maximum sentence on the state offense had expired October 24, 1980. He was released promptly on December 19, 1980, three days after the *Nunc pro tunc* order was mailed. (For a clearer understanding of the chronology of events Schedule A is hereto annexed.)

Satchell was convicted on March 17, 1981, on the bank robbery charge and is currently serving a twelve and one-half to twenty-five year sentence. His sentence for this bank robbery conviction has been reduced by DOCS by more than 31 days, thus compensating Satchell for the earlier unauthorized confinement.

## DISCUSSION

The issues presented in this motion are whether, upon reasonable and objective consideration: (1) punitive damages are warranted in a case such as this; (2) compensatory damages may be awarded for a *per se* violation of constitutional rights, despite the fact that no evidence, whatsoever, was introduced of actual injury; and (3) judgment n.o.v. should be granted because there was no liability under section 1983 or, in the alternative, because of the doctrine of qualified immunity.

## PUNITIVE DAMAGES

The Court is convinced beyond a doubt that the evidence in this case does not warrant saddling Clark with the burden of punitive damages. By awarding punitive damages the jury demonstrated its complete lack of understanding as to the function of punitive damages and the circumstances under which it is properly awarded. It failed to acknowledge that Satchell received a reduction of more than 31 days on a subsequent sentence, thereby demonstrating a lack of evil motive or intent.

Punitive damages are awarded in a section 1983 case either (a) to punish a defendant whose conduct is motivated by evil intent, or in lieu thereof, involves reckless or callous indifference to federally protected rights, *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); or, (b) to secure rights of others by deterring future violations. *Id.* at 54, 103 S.Ct. at 1639.

At oral argument Plaintiff agreed that no evidence was adduced at trial showing Clark was motivated by an evil intent or a callous indifference to his constitutional rights. He argued, however, that punitive damages would serve as an effective deterrent.

The Court is convinced that there is no necessity for, nor will deterrence be served by, a punitive damage award. Although Clark was on notice, as of December 2, 1980, that Satchell alleged that Justice Jaspan had signed a *Nunc pro tunc* order

crediting him with time already served, Clark had no actual proof that the order was valid or that it would have an effect on this sentence. There is no evidence that the events in this case were the result of a policy deliberately formulated to punish inmates whose release time had expired. In fact the Court finds that Clark acted prudently under the circumstances. Consequently, the Court finds that punitive damages would not deter any future similar mistakes.

In addition, an award of punitive damages may be set aside in the face of evidence demonstrating a defendant's lack of personal involvement in the constitutional violation and lack of evil motive or intent. *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir.1989). Such is the case here. There was no evidence that Clark was personally involved. For the forgoing reasons the award of punitive damages is set aside.

### ACTUAL DAMAGES

■ We are thus remitted to the question of actual damages sustained by Satchell. An award of damages for violations of constitutional rights under section 1983 is ordinarily determined according to principles derived from the common law of torts. *Carey v. Piphus*, 435 U.S. 247, 257–258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978). More specifically, these damage awards are governed by the basic principle of compensation. *Id.* at 255, 98 S.Ct. at 1048. In the context of deprivation of procedural due process rights the Court concluded that, although mental and emotional distress caused by the denial of due process was compensable under section 1983, an award of compensatory damages was improper unless the plaintiff offered proof that the injury actually occurred. *Id.* at 254, 98 S.Ct. at 1047.

The Supreme Court examined this issue in *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), and held that the above analysis also applies where the plaintiff alleges violations of substantive constitutional rights, which are afforded no greater protection than procedural rights. *Id.* at 309, 106 S.Ct. at 2544. Consequently, "... whatever the constitutional basis for section 1983 liability, damages must always be designed to *'compensate injuries'* caused by the constitutional deprivation." *Id.* (emphasis in the original). The civil rights plaintiff must demonstrate that the constitutional deprivation caused some actual injury. *McCann v. Coughlin*, 698 F.2d 112, 126 (2d Cir.1983).

In order to achieve the goal of compensatory damages, the jury may consider out of pocket expenses, other monetary harm as well as injuries such as "impairment of reputation ..., personal humiliation, and mental anguish and suffering." *Id.* at 307, 106 S.Ct. at 2543; (*quoting Gertz v. Robert Welch*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)). The jury may also consider the loss of time, physical discomfort or inconvenience suffered. *Raysor v. Port Auth. of New York and New Jersey*, 768 F.2d 34, 39 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986).

The evidence in this case included testimony from Clark and Stanton, as well as various exhibits, neither of which shed any light on the issue of damages. Satchell offered no proof at trial of mental or emotional suffering or distress. There was no evidence adduced at trial that Satchell actually suffered any monetary harm, i.e. lost wages or employment opportunities. Satchell has not proved that his reputation was tarnished or that he was humiliated as a result of the unlawful incarceration. Lastly, no evidence was produced that Satchell experienced any physical discomfort or physical injury as a consequence of this unfortunate episode.

The Court recognizes that confinement in and of itself is an injury, *See Raysor v. Port Auth. of New York and New Jersey*, 768 F.2d at 39, and that it is particularly difficult to value such an injury in economic terms. This, however, does not excuse Satchell from proving the value of his lost liberty; something he has clearly not done. The Court is mindful of the significance of Satchell's constitutional right not to be illegally seized or subject to

cruel and unusual punishment. The Court, however, can not turn a blind eye to the Supreme Court's edict in *Carey* and *Memphis Community School Dist.*, where, in the latter case, the court concluded that an award of compensatory damages may not be based on the abstract value of the constitutional right violated. *Memphis Community School Dist.*, 477 U.S. at 308, 106 S.Ct. at 2543. The court observed [h]istory and tradition do not afford any sound guidance concerning the precise value that juries should place on constitutional protections. Accordingly, were such damages available, juries would be free to award arbitrary amounts without any evidentiary basis, or to use their unbounded discretion to punish unpopular defendants. (citation omitted). Such damages would be too uncertain to be of any great value to plaintiffs, and would inject caprice into determinations of damages in § 1983 cases.

*Id.* at 310–311, 106 S.Ct. at 2544–2545.

Moreover, a judgment can not be upheld where the damages awarded are so unreasonably high as to be unconscionable or shock the conscience of the court. *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir.1978); *Wheatley v. Ford*, 679 F.2d 1037, 1039 (2d Cir.1982); *See United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975); *Kerr v. Quinn*, 533 F.Supp. 1329, 1333 (D.Conn.1982). The Court is convinced that the jury's award of $100,000 actual damages is predicated on some arbitrary abstract value of Satchell's constitutional rights, but in all events was unreasonably high and totally lacking evidentiary support.

## JUDGMENT NOTWITHSTANDING THE VERDICT

Recently, the Second Circuit reaffirmed [t]he trial court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party ..., the trial court should grant a judgment n.o.v. only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1988); *citing Mattivi v. South African Marine Corp.*, 618 F.2d 163, 167–68 (2d Cir.1980); *Haskell v. Kaman Corp.*, 743 F.2d 113 (2d Cir.1984); *Accord Proteus Books Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 508 (2d Cir.1989); *Samuels v. Health and Hospitals Corp.*, 591 F.2d 195, 198 (2d Cir.1979).

There are two reasons why Clark's motion for judgment n.o.v. should be granted. They are as follows:

### 1. *Liability under section 1983*

"Where damages are sought in a section 1983 action, the defendant must be responsible for the alleged constitutional deprivation: '[T]he general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Akil Al–Jundi v. Estate of Nelson Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989); *citing Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam).

The mere fact that a person is in a high position of authority is not reason enough to impose personal liability. *Al–Jundi*, 855 F.2d at 1065; *citing McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1987, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Turpin v. Mailet*, 579 F.2d 152, 167 (2d Cir.) (in banc), *cert denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978). In *Al–Jundi*, the Second Circuit affirmed this principle viz-a-viz Governor Rockefeller's role in retaking Attica prison. Rockefeller's involvement consisted of being kept up to date on the status of the hostage crisis at the prison, ratifying the DOCS Commissioner's decision to terminate the negotiations and recommending

certain safety measures in the event of an actual retaking.

Clark's involvement in Satchell's unlawful confinement appears to be less than Rockefeller's role in retaking Attica. Clark was made aware of Satchell's allegations concerning the *Nunc pro tunc* order but was not personally involved in the computation of Satchell's sentence. It was not through Clark's personal initiative that Satchell was unlawfully confined. Clark's information from Walsh indicated that Satchell's sentence for Possession of Gambling Records had not expired. Despite the fact that the *Nunc pro tunc* order was available from the Suffolk County Clerk's Office it was not produced before Justice Baisley at the *habeas corpus* hearing. In the last analysis it is not clear what caused Suffolk County to delay so long before finally forwarding the *Nunc pro tunc* order. There was no evidence, however, to support a finding that Clark in any way obstructed or interfered with the forwarding of that order.

■ A finding that the defendant was not 'personally involved' in the deprivation of a plaintiff's constitutional rights is not, however, dispositive of a claim under section 1983. There is more. Supervisory liability may be imposed when an official has "actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." *Al–Jundi*, 885 F.2d at 1066; *Meriwether*, 879 F.2d at 1048.

In *Meriwether* the Court of Appeals affirmed the district court's finding of supervisor liability as regards the Superintendent of a correctional facility and the Commissioner of DOCS in a section 1983 action. *Id.* at 1047–1048. In that case, the Commissioner, fearing a prisoner revolt ordered the transfer of some prisoners and accordingly, the Superintendent prepared a list of candidates for transfer. However, the plaintiffs, in the course of their transfer were physically abused by guards. This finding of supervisory liability was based on the fact that the defendants took no precautions to insure the prisoners' safety.

Clark had notice of Satchell's claim that he was being illegally detained on December 2, 1980, by virtue of Stanton's memorandum which included a copy of Satchell's letter specifically referring to Justice Jaspan's *Nunc pro tunc* order—but not including a copy of the order itself. The Court is not insensitive to the fact that some 14 days elapsed between the time Clark became aware of the alleged existence of the *Nunc pro tunc* order and the date it was mailed to DOCS. This delay may or may not have been the result of Suffolk County's negligence in not forwarding the *Nunc pro tunc* order sooner. This is not clear. But no evidence was adduced showing that the delay was a result of Clark's negligence. In all events, under these circumstances the Court can not find that Clark was grossly negligent or deliberately indifferent to Satchell's constitutional rights.

2. *Qualified Immunity*

■ The law has long recognized that public officers require immunity to shield them from undue interferences with their duties and from potentially disabling threats of liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Corrections officers must balance the interests of the prisoners in their charge with that of the general public who rely on them to conscientiously perform their jobs.

In assessing a claim of qualified immunity the Supreme Court has articulated that the limits of qualified immunity are essentially defined in objective terms. *Id.* at 819, 102 S.Ct. at 2738. The Supreme Court, examining liability under section 1983 for an allegedly unlawful arrest, held, "[D]efendants will not be immune if on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The question here is whether a reasonably competent officer would have conclud-

ed, based on the information Satchell provided to DOCS and Clark, that Clark should have ordered Satchell's release earlier. To release Satchell without first ascertaining the validity and effect of the *Nunc pro tunc* order would be irresponsible considering Clark's duty to the public. Consequently, the Court concludes that officers of reasonable competence could disagree as to whether or not Clark should have ordered Satchell's release merely on the basis of his statements.

On reconsideration of the record the Court concludes that it was an error to submit the case to a jury without a directed verdict. The evidence adduced at trial, i.e. Walsh's memorandum of November 6th coupled with Satchell's failure to produce the *Nunc pro tunc* order at Justice Baisley's *habeas corpus* hearing, demonstrated that Clark had reasonable grounds for his belief that it was not clear that Satchell was being unlawfully detained. Furthermore, there was no proof that Clark's behavior rose to the level of reckless indifference or gross negligence. Consequently, the Court should have granted Defendant's motion for a directed verdict and now instead grants his motion for judgment n.o.v..

## CONCLUSION

For the reasons stated, the award of damages may not stand. Defendant's motion for judgment n.o.v. is granted however, if this judgment n.o.v. is hereafter vacated or reversed, the Court, as an alternative, in the exercise of its discretion hereby grants the motion for a new trial. The Court reserves this option because of its findings that (1) there was no basis for punitive damages; (2) no actual damages were proven; (3) there was no liability under section 1983; and (4) the Defendant was qualifiedly immune.

SO ORDERED.

## SCHEDULE A

*June 29, 1978* Supreme Court Justice Jaspan signed the original order sentencing Satchell to one and one-half to three years for Possession of Gambling Records (the "Gambling Sentence"). The Gambling Sentence is to be served concurrently with a federal sentence Satchell was then serving. Gambling Sentence expires on June 28, 1981.

*June 29, 1978* Justice Jaspan signed the *Nunc pro tunc* order crediting Satchell for time served. By virtue of this order Gambling Sentence expires on October 24, 1980.

*November 22, 1979* Satchell is released from federal detention and placed on federal probation. He is not turned over to state authorities despite the fact that term of incarceration for the Gambling Sentence had not expired.

*August 6, 1980* Satchell is arrested in Suffolk County and charged with bank robbery. Unable to post bail he remained in custody.

*October 24, 1980* By virtue of the *Nunc pro tunc* order Satchell's Gambling Sentence expired.

*October 29, 1980* Satchell posted bail and was released from Suffolk County jail.

*November 6, 1980* Walsh notified Clark that Satchell had a maximum expiration date of June 28, 1981 for his Gambling Sentence.

*November 18, 1980* Satchell taken into custody by Suffolk County police to serve the balance of his Gambling Sentence.

*November 19, 1980* Satchell's Writ of *Habeas Corpus* is denied following a hearing before Supreme Court Justice Baisley.

*November 24, 1980* Satchell is transferred from Ossining Correctional Facility ("Ossining") to Downstate Correctional Facility ("Downstate").

*November 27, 1980, December 1, 1980 and December 2, 1980* Satchell wrote to Stanton advising her that he was being illegally detained because according to the *Nunc pro tunc* order his Gambling Sentence expired October 24, 1980.

*December 2, 1980* Stanton sent Clark and Kernan a copy of Satchell's November 27, 1980 letter.

*December 2, 1980* Satchell wrote Middlebrook and Kernan advising them of the *Nunc pro tunc* order.

*December 5, 1980* Stanton sent Satchell a copy of his sentence computation performed by Middlebrook.

*December 8, 1980* Senior Parole Officer at Downstate advised Director of Institutional Parole Services that Ossining has not yet forwarded Satchell's folder.

*December 15, 1980* Kernan referred Satchell's case back to Stanton.

*December 16, 1980* Envelope postmarked this date containing *Nunc pro tunc* order is mailed from Suffolk County Sheriff's Office.

*December 19, 1980* Satchell is released from custody.