Walter L. GRICE, Administrator of the
Estate of Billy Wayne Grice, et al.,
Plaintiffs-Appellants,

v.

J. RAY McDERMOTT AND COMPANY,
INC., Defendant-Appellee.

No. 72-1430

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1972.

Rehearing Denied Oct. 11, 1972.

H. Alva Brumfield, New Orleans, La., for plaintiffs-appellants.

Frank C. Allen, Jr., New Orleans, La., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This admiralty case involves an action for the wrongful death of a seaman lost to the utterly unfeminine force of Hurricane Camille. Following a stormy trial, the jury returned its verdict on special interrogatories. The trial judge believed that the tempest had subsided and accordingly entered judgment for appellee. Perceiving prejudicial error in the charge to the jury that the trial judge inadvertently failed to forecast, we find that the case must be reversed and remanded for a new trial.

The basic facts of this case were stipulated at the trial. Appellants' decedent, Billy Wayne Grice, was a seaman employed by appellee, J. Ray McDermott and Company, Inc., on its dredge barge LAFITTE operating near Chandeleur Island in the Gulf of Mexico approximately twenty miles from Gulfport, Mississippi. On the morning of August 16, 1969, a hurricane watch began and small

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

craft warnings were posted for the area. Captain Eddie B. Moore, in command of the LAFITTE, was ordered to move the barge and was advised that a tug was being sent to tow it to shelter. The tug was not expected to arrive until late that night.

The crew of the LAFITTE customarily left the company's and their own automobiles parked at the Texaco Marina in Gulfport, Mississippi, while they were at sea. In view of the impending storm, at approximately 4:00 p. m. Captain Moore dispatched the barge tender M/V HAWK, its operator, Norman Lapeyrouse, and Grice to the Texaco dock to move the cars to a safer location. The trip usually took about two hours each way, and the M/V HAWK was expected to return to the LAFITTE before the tug arrived.

The M/V HAWK had no radio and had been "running hot" during the week preceding the storm. That evening Captain Moore received a radio relay of a telephone call from Lapeyrouse in Gulfport. Lapeyrouse reported that the M/V HAWK's engine was again "running hot" and inquired whether he and Grice should return to the LAFITTE. Captain Moore left that decision to Lapeyrouse's judgment but surmised from the conversation that the M/V HAWK would soon be returning. That was the last that anyone saw or heard of Grice, Lapeyrouse, or the M/V HAWK.

The tug arrived about midnight. Since the M/V HAWK had not yet returned, Captain Moore decided to wait a while longer before departing the area. At 4:00 a. m. the next morning the M/V HAWK had still not arrived, so Captain Moore allowed the towing away of the LAFITTE to begin.

Camille soon struck in all her fury, leaving chaos and destruction in her path. Subsequent searches failed to find any sign of the two missing men or of the M/V HAWK.

When all hope had been given up for the return of the missing men, appellants filed suit in the United States District Court for the Eastern District of Louisiana. They sought damages under the Jones Act [1] for the wrongful death of Billy Wayne Grice due to specific acts of alleged negligence by appellee.

After the presentations of the case, the trial judge prepared to submit the case to the jury on special interrogatories. Appellants objected generally to the use of special interrogatories, but they did not specifically object to the language of the interrogatory here challenged. As finally submitted to the jury, the first special interrogatory read as follows:

"1. Do you find that Billy Wayne Grice died while [working]* aboard the vessel M/V HAWK in the Gulf of Mexico during Hurricane Camille on or about August 16, or August 17, 1969?"[2]

All other submissions, which went to negligence and unseaworthiness,[3] were

---

1. The Merchant Marine Act of 1920, 46 U.S.C.A. § 688, construed in Moragne v. States Marine Lines, Inc., 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339.

\* Crossed out by jury.

2. Shortly after the jury had retired for the first time, the judge called them back and at appellant's request added "or August 17."

After they had resumed their deliberations, the jury sent the judge a note that read,

"We the jurors find the 1st statement to be a bit misleading. It is stated that Billy Wayne Grice died while *working* aboard the Hawk. We feel that after discussing the testimony, that he was not working on this vessel. If it is necessary would you please clarify this for us."

The judge responded in writing:

"To clarify interrogatory #1, please strike and delete the word 'working.' If this does not clarify the matter, please advise the court."

3. Appellants assert that appellee was negligent in (1) sending Grice on a mission under perilous weather conditions, (2) furnishing him with a vessel whose engine was not functioning properly and which did not have a radio, and (3) failing to conduct rescue operations when the M/V HAWK was long overdue.

contingent on the first interrogatory being answered in the affirmative. Thus, as soon as the first interrogatory was answered by the jury in the negative, judgment was entered for appellee.

In their subsequent motions for judgment notwithstanding the verdict and alternatively for new trial, appellants for the first time raised the issue they now present on appeal. The gist of their argument is that the first interrogatory was erroneous in failing to state the applicable law correctly and in being inconsistent and at variance with other portions of the court's charge to the jury.

Appellants apparently recognize that their failure to object before the jury returned its verdict seriously weakens their position on appeal. See Fed.R. Civ.Proc. 49(a) & 51; Bish v. Employers Liability Assurance Corp., 5 Cir. 1956, 236 F.2d 62, 68. Nevertheless, they argue that unless this court remands the case for a new trial, a substantial miscarriage of justice will result. We agree. See Pritchard v. Liggett & Myers Tobacco Co., 3 Cir. 1965, 350 F.2d 479.

We state at the outset of our analysis that this is not a case where we override the jury's verdict because we would have answered the interrogatory differently.[4] Rather, this is one of those uncommon occasions when unpreserved trial court error would result in grave injustice if allowed to stand.

The first interrogatory is clearly an incorrect application of the law to the facts. Although appellants did indeed have the burden of proof, see, e. g., Bowser v. Lloyd Brasileiro S.S. Co., 5 Cir. 1969, 417 F.2d 779, their's was not the burden of proving the precise site of Grice's death. To the contrary, recovery under the Jones Act depends upon showing that death occurred in the course of a seaman's employment—death "aboard" or "working aboard" the vessel is not required. E. g., Braen v. Pfeifer Oil Trans. Co., 1959, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191.

If the jury had believed that Grice died in the Gulf of Mexico by drowning, or died upon being thrown ashore, or for that matter died in Gulfport while moving the cars, they would vote "no" to interrogatory number one. The governing law, however, would support a verdict for appellants if the jury believed that any of these possibilities had in fact occurred.

Additionally, the special interrogatory was inconsistent with other elements of the court's instructions to the jury.[5]

"The difficulty created by inconsistent or contradictory instructions on a material point is, first, that it is impossible for the jury to know which is to be their guide; and, secondly, it is impossible after verdict to ascertain which instruction the jury followed." Standard Life & Acc. Ins. Co. v. Sale, 6 Cir. 1903, 121 F. 664, 669. See also

---

4. The trial judge correctly stated:
"I disagree with the jury, there is no question in my mind about that, and I would have decided the matter differently. [But] that is not the test we are faced with."
It is a rare case when disagreement with the jury can justify either trial court or appellate alteration of their verdict. See Marsh v. Illinois Central R. R., 5 Cir. 1940, 175 F.2d 498.

5. The trial judge also charged the jury as follows:
"Whether or not Billy Wayne Grice suffered death in the Gulf of Mexico is a question of fact for you, the jury, to determine. . . . If you find that it is more likely than not that Billy Wayne Grice perished in the Gulf during Hurricane Camille, then you should find that plaintiffs have proved this element of their case . . .

.    .    .    .    .

"Now, if your answer to Question No. 1 is yes, that is, you found that he did die, you should go on to Question No. 2. If your answer is no, that is, if you feel that it has not been proven that he did die in Hurricane Camille, you should return to the Court at that time."

Bank of the Metropolis v. New England Bank, 1848, 47 U.S. (6 How.) 212, 12 L. Ed. 409. Amending the language of the first interrogatory [6] did not cure the misstatement of the law and perhaps exacerbated the confusion the jurors perceived.

We recognize that

"[i]t is the general rule that the appellate court will not consider trial errors to which no timely objection has been made. [But the] rule is not inexorable and is subject to exception. [Citations omitted]. Where it is apparent on the face of the record that a miscarriage of justice may have resulted from counsel's failure to properly protect the interest of his client by timely objection, the error must be noticed and rectified."

Pritchard v. Liggett & Myers Tobacco Co., *supra*, 350 F.2d at 486.

In sum, it was possible, indeed likely, that in the instant case the jurors believed that they had to find that Grice died while on board the M/V HAWK in order to answer "yes" to the first interrogatory and to proceed to answer the remaining submissions. It was not necessary, however, that appellants prove that state of facts in order to recover under the law, and appellants were thus deprived of their right to go to the jury under the correct law on each of their issues. That deprivation was on these facts so egregious that a new trial must be ordered. This conclusion is fortified because the error now so plainly revealed is not simply a law office afterthought. To the contrary, the jury, by its confusion and written inquiry to the Court, at least exposed the operational significance of the Judge's mistake and perhaps came close in their untutored way of discerning it as a legal error in a way that brought the whole thing to the surface for corrective action.

Reversed and remanded.