Sammie J. RODGERS,
Plaintiff-Appellee,

v.

FISHER BODY DIVISION, GENERAL
MOTORS CORPORATION,
Defendant-Appellant.

No. 83-1022.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 16, 1983.

Decided July 13, 1984.

Rehearing Denied Oct. 5, 1984.

Wendell R. Tucker, argued, Detroit, Mich., for defendant-appellant.

Frances McIntyre-Leonard, argued, Detroit, Mich., for plaintiff-appellee.

Before MERRITT and CONTIE, Circuit Judges, and POTTER, District Judge.[*]

JOHN W. POTTER, District Judge.

Defendant Fisher Body Division, General Motors Corporation (General Motors), appeals from a judgment entered in an employment discrimination suit. 575 F.Supp. 12 (W.D.Mich.1982). Suit was brought under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e–5(f) *et seq.*, Title VII of the Civil Rights Act of 1964. Plaintiff waived his Title VII claims at the close of the case. The plaintiff, Sammie J. Rodgers, a black man, asserted that General Motors intentionally discriminated against him because of his race. The jury awarded plaintiff $300,000 compensatory and $500,000 punitive damages.

In this appeal the Court confronts a record which is in large part free of preserved error. The record reveals, however, that the amount of compensatory damages awarded, when measured against the evidence of plaintiff's harm which was presented at trial, is clearly excessive. The excessiveness of the compensatory award calls into question whether the punitive damages award was properly determined. This is not a case in which an excessive verdict resulted from jury passion and prejudice. Rather, it is a case where the jury, having been provided inadequate guidance, lost its way in its attempt to determine just and reasonable damages awards.

The Court has considered the claims of error raised by the defendant. Because of its concern with the size of the verdict, the Court also, *sua sponte*, has considered errors which were not preserved at trial and which General Motors has not raised on appeal. The Court finds this to be "one of those uncommon occasions when unpreserved trial court error would result in grave injustice if allowed to stand." *Grice v. J. Ray McDermott and Co., Inc.*, 465 F.2d 486, 488 (5th Cir.1972). Therefore, for the reasons hereinafter stated, the Court will order that the cause be remanded for new trial solely on the issues of compensatory and punitive damages.

The facts out of which this suit arose can be summarized as follows. The plaintiff was hired by defendant as one of several temporary guards at the Lansing Fisher Body plant. When hired, he was told that a permanent plant guard position would soon open and that he would be considered for it if he successfully passed a six month probationary period. He was also told that he would be competing with a white employee for the position. Approximately five months after beginning work, Mr. Rodgers was called to a meeting with the chief of security at the Lansing plant. Also at this meeting were the supervisor of salaried personnel and two sergeants of the Lansing plant security force. At the meeting defendant's agents alleged four incidents of work-related misconduct by plaintiff. Although he offered reasonable explanations for each of the four incidents, Mr. Rodgers was told that he was being laid off. He was also told that Jeffrey Bodary, a white temporary plant guard, had been given the permanent plant guard position for which plaintiff had competed.

Evidence at trial indicated that both plaintiff and Mr. Bodary met and exceeded the rather minimal qualifications for the position. There was also evidence that Mr. Bodary was given more training than plaintiff and that he had been given informal coaching by his superiors.

In this appeal, the defendant presented four issues in its initial appellate brief and

[*] The Honorable John W. Potter, United States District Court for the Northern District of Ohio, sitting by designation.

five issues in its reply brief. These can be summarized as follows: (1) whether plaintiff established a prima facie case of discriminatory treatment under either 42 U.S.C. § 1981 or Title VII; (2) whether plaintiff's counsel made improper inflammatory remarks during closing arguments; (3) whether the District Court erred in, "instructing the jury that they could decide whether defendant breached the collective bargaining contract where the issue of breach had already been decided adversely to plaintiff in the contract's exclusive grievance procedure"; (4) whether the District Court erred in ruling that an employer may be held vicariously liable for punitive damages of $500,000 for the actions of its relatively low level supervisors; (5) whether the damages awarded are excessive. In its arguments regarding excessive damages, defendant focused upon the lack of significant evidence of mental distress and upon claimed error related to the punitive damages award. For the reasons stated below, the Court finds no merit in defendant's first four claims of error. Regarding the fifth claim, although the Court agrees that damages are excessive, the reasons for the Court's finding of excessiveness are, for the most part, different from those which defendant has asserted.

■ Defendant, in asserting that plaintiff did not establish a prima facie case, stated that plaintiff had not shown systematic discrimination against minorities, an environment of discrimination, or a history of discrimination at the Lansing plant. However, because this is a disparate treatment rather than a disparate impact case, such proof is not required. Plaintiff met his burden of establishing the prima facie case as first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ The Court, having carefully reviewed the trial transcript, finds that the closing arguments of plaintiff's counsel were not inflammatory. Her comments about the size and wealth of General Motors were made in rebuttal of statements made in closing arguments by General Mo-

tors' counsel. Also, these remarks were relevant and proper because plaintiff sought punitive damages.

■ Regarding the claimed error related to the collective bargaining agreement, it is noted that defendant, not plaintiff, introduced a copy of the agreement into evidence. The district court's instruction as to the agreement was as follows: "If you find that a collective bargaining agreement was violated with respect to length of service, you are instructed that Defendant is liable for such violation but only if you also find that the violation was intentional discrimination against Plaintiff based on his Race."

The Supreme Court has recently held that prior arbitration decisions brought pursuant to the terms of a collective bargaining agreement are not to be given preclusive effect in subsequent actions under 42 U.S.C. § 1983. *McDonald v. City of West Branch, Michigan*, — U.S. —, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). The rationale for the Supreme Court's ruling applies equally in suits, such as this one, brought under 42 U.S.C. § 1981.

The district court restricted consideration by the jury of the alleged violation only if it was, "intentional discrimination against the plaintiff based on his race." Furthermore, the instruction, if erroneous, was harmless error.

■ Defendant's argument that it is improper to impose punitive damages on General Motors for the misconduct of its relatively low-level supervisory employees is not persuasive. The chief of security at the Lansing plant was acting within the scope of his authority when he laid off plaintiff. The supervisor of salaried personnel was also present at the meeting at which plaintiff was told that he would be laid off. General Motors had authorized the actions of these individuals and is thus liable for their behavior.

■ The Court now considers the troubling issue of the excessiveness of the verdict. All the federal circuits today agree

that there should be appellate supervision of the size of jury verdicts. 6A Moore's Federal Practice ¶ 59.08[6] (2d ed. 1981). In determining whether a verdict is so excessive that appellate review is proper, the Court must find the verdict to be "shocking" or to manifest "plain injustice." *Bauer v. Norris*, 713 F.2d 408 (8th Cir. 1983); *Zarcone v. Perry*, 572 F.2d 52 (2nd Cir.1978); *Williams v. Steuart Motor Co.*, 494 F.2d 1074 (D.C.Cir.1974). Before an appellate court reverses on the basis of excessive damages, it must make a detailed appraisal of the evidence bearing on damages. *Grunenthal v. Long Island R. Co.*, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968).

■ The Court has made this appraisal, as stated above, and finds both the compensatory and punitive damages awarded in this case to be so excessive as to shock the conscience of the Court. These awards resulted from several errors which prevented the jury from receiving adequate guidance on the damages issues.

Errors which affected the compensatory damages award include: (1) the failure of either party to request a charge and the failure of the District Court to charge the jury on reduction of future damages to present value; (2) plaintiff's closing argument in which plaintiff's counsel calculated on a blackboard plaintiff's damages for lost wages; (3) the limited evidence of mental distress.

The Court *sua sponte* raises the first two of these three issues.

■ It is settled law in this Circuit that an award of future damages must be reduced to present value in order to take into account the earning power of the money. *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); *Petition of United States Steel Corp.*, 436 F.2d 1256, 1280 (6th Cir.1970), *cert. denied sub nom. Lamp v. U.S. Steel Corp.*, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed. 153, *rehearing denied* 403 U.S. 924, 91 S.Ct. 2227, 29 L.Ed.2d 703 and 403 U.S. 940, 91 S.Ct. 2247, 29 L.Ed.2d 720 (1971), appeal after remand 479 F.2d 489, *cert. denied* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973).

■ The proposed jury instructions of neither defendant nor plaintiff included a charge which stated that an award of future damages must be reduced to present value. Neither plaintiff nor defendant objected to the court's instructions on compensatory damages. Ordinarily, such failure means that a reviewing court will not consider the error below. Fed.R. Civ.P. 51; 5A Moore's Federal Practice ¶ 51.03–.04. Defendant has not raised this issue on appeal. The Court, however, has discretion to consider these erroneous instructions regarding compensatory damages if it finds the instructions to have been "plain error." *Grice v. J. Ray McDermott and Co., Inc.*, 465 F.2d 486 (5th Cir.1972); Fed.R.Ev. 103(d), 10 Moore's Federal Practice § 103.41. In *O'Brien v. Willys Motors, Inc.*, 385 F.2d 163 (6th Cir.1967), this Court quoted with approval a statement by the Supreme Court concerning when such appellate review is proper: "In exceptional circumstances, ... appellate courts, in the public interest may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). The error in question here was obvious and it affected the fairness and integrity of the judicial process in that it was undoubtedly to some degree responsible for a shockingly large verdict. When an appellate court determines that the jury did not have before it a correct statement of the law regarding damages, it can remand solely for a redetermination of damages. *Crador v. Boh Brothers, Inc.*, 473 F.2d 1040 (5th Cir.1973); *cf. Grimm v. Leinart*, 705 F.2d 179 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984).

■ Not only did defendant not request a charge that future damages must be reduced to present value, but General Mo-

tors also failed to object to plaintiff's extremely speculative estimate of his damages for lost wages. In her closing argument, plaintiff's counsel, using a chalkboard, calculated these damages to be $220,770. She first estimated the amount plaintiff would have received had he continued working in the plant guard position during the seven month period between the date defendant laid him off and the date when he began his present job. She then calculated his "lost pay" from the date he began his present job until the time of trial.

She did this by determining the difference between plaintiff's actual salary and the salary, including overtime, which Mr. Bodary, the successful candidate for the permanent plant guard position, testified that he has received annually during the same years. She next added "15 percent at least" for fringe benefits and a figure for interest. She then suggested that "future interest" would have to be projected for 13 years, until the time of plaintiff's retirement at age 65. Apparently, plaintiff's counsel meant future income based on the difference between plaintiff's General Motors income and the income he might receive for the next 13 years from his present employer. The $220,770 figure thus includes future damages which were not reduced to present value. For a critical comment on this procedure, see *Ballantine v. Central R.R. of New Jersey*, 460 F.2d 540 (3rd Cir.), *cert. denied* 409 U.S. 879, 93 S.Ct. 133, 34 L.Ed.2d 133 (1972). It is apparent that plaintiff's counsel's chalkboard calculations had an effect on the jury. During its deliberations the jury requested "the blackboard with the figures for compensatory damages." The court denied this request, stating that the blackboard and the figures thereon were not evidence in the case. It was plain error for the court not to instruct on reducing future damages (loss of income) to present value. Furthermore, in the case of an injury of an economic nature, the injured party is to be placed, as nearly as possible, in the position he would have been in had the wrong not occurred. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362,

45 L.Ed.2d 280 (1975). The amount of damages necessary to compensate a plaintiff for the deprivation of his constitutional rights is a question of fact and therefore should not be reversed on appeal unless the lower court's determination is clearly erroneous. *Busche v. Burkee*, 649 F.2d 509 (7th Cir.1981). Although juries are thus accorded great discretion in determining the amount of damage awards, damages must be proved; they must not be speculative. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946); *Rhoades v. Boren*, 486 F.2d 132 (5th Cir. 1973).

Plaintiff has not proven economic damages in an amount which approaches the $220,770 figure which plaintiff's counsel suggested to the jury as his actual damages. Also, the evidence of the comparative fringe benefits was not sufficient to put a dollar value on the loss which plaintiff may have suffered as a result of his working at his present job rather than for General Motors.

Evidence relating to lost wages included the following: plaintiff's 1977 federal tax return; plaintiff's testimony as to his earnings as a General Motors employee and at his present job; plaintiff's testimony concerning fringe benefits he received at General Motors and receives at his present job; plaintiff's testimony that in his current job he receives "comp. time" rather than payment for overtime worked; the testimony of Mr. Bodary that his current base salary is $19,000 annually, with an expected annual income of $33,000, including overtime. Mr. Bodary also testified concerning the fringe benefits he receives.

With so little actual evidence of lost wages before it, the jury was no doubt unduly influenced by the extremely hypothetical figures presented by plaintiff's counsel in closing argument.

General Motors' counsel made no objection to the use of these highly speculative figures. Nor did he attempt, in any detail, to rebut them. In his closing arguments he responded to plaintiff's lost wages estimate by saying "I'm not even going to deal with it. It's preposterous." He suggested

that if General Motors did owe plaintiff damages for lost wages the amount should only be based on what he lost up to the time he found new employment. The jury was, in short, given little guidance which would be of aid in reaching a reasonable damage figure for lost wages.

Plaintiff also claimed compensatory damages based on the mental distress which he suffered as a result of being discriminatorily laid off by defendant. In her closing argument plaintiff's counsel stated that plaintiff was seeking $500,000 for mental stress.

Virtually the only evidence of the mental stress which plaintiff suffered as a result of his layoff was plaintiff's brief testimony in this regard. Because of an error for which defendant was not responsible, the Michigan Employment Security Commission denied plaintiff's eligibility to receive unemployment benefits; this error resulted in his not receiving benefits for 13 weeks. Plaintiff, his wife and child went on welfare for approximately seven months. Plaintiff testified that this:

> was a very humiliating type of experience because I had to go and set for hours at the Department of Social Services waiting and their language wasn't the best, as far as my treatment as a human being. I had got one, my car repossessed, which I owed a balance of $2,400 on and paid $5800 for the car, when I bought it. And, I had to go to the Veterans' Service Office because the welfare wasn't really enough to sustain my family and myself.

In *Carey v. Piphus*, 435 U.S. 247, 263–64, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978), an action brought under 42 U.S.C. § 1983, the Supreme Court stated:

> Finally, we foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself. Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff.[20] In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that *neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.*

> 20. We use the term "distress" to include mental suffering or emotional anguish. Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others. Juries must be guided by appropriate instructions, and an award of damages must be supported by competent evidence concerning the injury.... (Emphasis supplied.)

This Court has said that "[o]nce a violation of civil rights is found, a plaintiff may recover for out-of-pocket expenses and emotional distress, but there must be sufficient evidence to support such a finding." *Morrow v. Igleburger*, 584 F.2d 767, 769 (6th Cir.1978) *cert. denied*, 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78, *reh. denied*, 440 U.S. 931, 99 S.Ct. 1271, 59 L.Ed.2d 489 (1979).

 Plaintiff's evidence of mental distress is too slight to support a sizeable damages award for the intangible injury of mental harm. While jurors might easily infer that going on welfare and losing one's car would cause emotional distress, plaintiff has not demonstrated his mental distress with the specificity required by *Carey v. Piphus*. The jury did not have sufficient evidence to place a high dollar value on plaintiff's emotional harm. *See Woods-Drake v. Lundy*, 667 F.2d 1198 (5th Cir.1982); *Room v. Caribe Hilton Hotel*, 659 F.2d 5 (1st Cir.1981); *Busche v. Burkee*, 649 F.2d 509 (7th Cir.1981).

It is impossible for the Court to determine what part of the $300,000 award the jury apportioned to each of the two aspects of plaintiff's injuries, lost wages and emotional distress. It is clear, however, that plaintiff's evidence was insufficient to support such a large award in regard to either aspect of his claim for compensatory damages.

The plaintiff sought $500,000 in punitive damages, and the jury awarded him this amount. In *Johnson v. Railway Express*

*Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) the Supreme Court held that a plaintiff who establishes a cause of action under 42 U.S.C. § 1981 is entitled under certain circumstances to punitive damages.

 Defendant asserts that the District Court's instructions on punitive damages amount to plain error, that to justify an award of punitive damages there must be an aggravating element beyond the facts necessary to establish a § 1981 violation. The district court's instructions on punitive damages are based on Fifth Circuit pattern instructions. In its proposed jury instructions, defendant submitted instructions on punitive damages which were more detailed than the rather brief and general Fifth Circuit instructions which the court used. The instructions given were, however, in accord with Restatement 2d of Torts definition of punitive damages (§ 908). *See also Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The instructions of the trial court properly stated that the jury had discretion to impose punitive damages against defendant as punishment for the acts of its agents and for the purpose of deterrence. Statements by the court and by plaintiff's counsel that the financial resources of defendant could be considered in fixing the amount of damages were also proper.

 The same standard applies to appellate review for excessiveness of punitive as of compensatory damages: "Whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Zarcone v. Perry,* 572 F.2d 52 (2nd Cir.1978). Appellate courts can properly reverse the punitive damages award as part of their general supervision of the size of jury verdicts. 6A Moore's Federal Practice ¶ 59.08[6] (2d Ed.1981).

 It is likely that the errors which tainted the compensatory award also affected the jury in its determination of punitive damages. While punitive damages may stand independently of compensatory, here the two are sufficiently interwoven that the interests of justice require that both issues be retried. *See Fury Imports,*

*Inc. v. Shakespeare Co.,* 554 F.2d 1376 (5th Cir.1977). Both punitive and compensatory damages awards are so excessive as to suggest that the verdicts were reached in an improvident manner. *Fountila v. Carter,* 571 F.2d 487 (9th Cir.1978).

Accordingly, we affirm the District Court's judgment on the issue of liability and reverse on the issues of damages. The cause is remanded for trial solely on the issues of compensatory and punitive damages.