869 F.2d 1490
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Logan HELM, Administrator of the Estate of Larry Helm
(formerly Larry Helm), Plaintiff-Appellee,
v.
David BUNCH, Roger Pierce, James B. Dunbar, Jailor,
Defendants-Appellants.
 No. 88-5120.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1989.
 
 Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Kentucky State Policeman David Bunch and Russell County Deputy Sheriff Roger Pierce, appeal from the district court's denial of their motions for judgment notwithstanding the verdict, a new trial, to alter, amend and vacate judgment and remittitur in this civil rights action brought pursuant to 42 U.S.C. Sec. 1983. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * This case arose out of an incident involving the appellants and Larry Helm[1] which occurred on New Years Eve of 1979. On that date, Larry Helm was arrested by appellants Bunch and Pierce on charges of driving while intoxicated.[2] At the jailhouse an altercation occurred. Helm received a gash on his forehead and had two teeth knocked out. He alleged that he sought medical treatment from James Dunbar, the county jailer, and asked to see an attorney, but both requests were denied.
 
 
 3
 On December 19, 1980, Helm filed his complaint, alleging that the appellants had violated his constitutional rights. The cause was tried to a jury in late January and early February of 1985. Before trial, the district court ordered the parties to exchange witness lists. The court also granted a motion in limine limiting evidence of Helm's resisting arrest to acts related to the occurrence at issue here. The appellants wished to enter evidence of Helm's previous acts of violent resisting arrest.
 
 
 4
 At voir dire, the judge asked the prospective jurors the following question: "Have any of you ever had any past experience that was in some way distasteful or unfavorable to you in which you had an experience with a law enforcement officer of any kind, besides getting a ticket? I suppose several of you have had those. I have too." In response to this question, Juror Louis Gouvas told of a problem he had with a conservation officer but indicated that the problem would not keep him from being fair or impartial.
 
 
 5
 At trial, Helm testified about his medical problems resulting from the jailhouse incident. He also presented the testimony of his DUI attorney Robert Wilson who testified that he saw Helm upon his release from jail and that he had a cut on his head. Wilson was not on the pretrial witness list presented by Helm. Helm's counsel claimed at a bench conference that the reason Wilson was not included on the list was that he was surprised that appellants would deny that Helm was wounded and that Wilson's testimony was necessary to show that Helm had a wound when he left the jail.
 
 
 6
 At the close of the evidence, interrogatories were submitted to the jury. The interrogatories read in pertinent part as follows:
 
 I. UNREASONABLE FORCE
 
 7
 (a) Did the plaintiff, Larry Helm, suffer a deprivation of his liberty without due process of law, by reason of the acts and conduct of Trooper David Bunch or Deputy Sheriff Roger Pierce in the breathalyzer room at the jail?
 
 ANSWER; YES ____ NO ____
 
 8
 (b) If your answer to (a) is "yes," then which of those defendants deprived him of this liberty?
 
 TROOPER BUNCH ________
 DEPUTY SHERIFF PIERCE ________
 BOTH ________
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 (b) Were the injuries inflicted upon the plaintiff by the defendants in a malicious, wanton or oppressive manner?
 
 ANSWER: YES ____ NO ____
 
 12
 (IF YOUR ANSWER TO QUESTION (b) IS "NO," THEN SKIP QUESTION (c). HOWEVER, IF YOUR ANSWER TO QUESTION (b) IS "YES," THEN ANSWER QUESTION (c).)
 
 
 13
 (c) If your answer to Question (b) is "yes," then what sum of money do you award the plaintiff as punitive damages against the defendants? $______.
 
 
 14
 While deliberating, the jury sent the following questions to the court:
 
 Regarding the sum of award (III)
 
 15
 a. What percentage of award, if any, will be received by the lawyer?
 
 
 16
 b. What percentage of award, if any, will be received by the Plaintiff?
 
 
 17
 c. Will the attorney's expenses be in addition to his fee?
 
 S/Louis Gouvas
 2/7/85 C80-0151
 
 18
 The appellants moved for a mistrial on the ground that the jury was considering extraneous matters. The court denied this motion and gave the jury the following answer to its questions:
 
 
 19
 Now, I probably can answer these better in one statement rather than one at a time. But essentially, in a civil rights case, as this type, the victorious or the winning side may recover as costs in the case a fair and reasonable attorney's fee plus expenses. But that's directed to the attention of the Judge of the Court after the trial. Whichever side wins may request that the Court award attorneys' fees and expenses to be paid by losing side to the attorney on the other side or the party, if the party runs up these expenses. So any award that you make, if any, will all be received by the plaintiff
 
 
 20
 The jury returned a special verdict in favor of Helm and awarded him $14,000 from Bunch and Pierce jointly and severally for deprivation of liberty without due process of law, $7,000 from Dunbar for denial of his right to counsel and medical care, and $9,000 from all defendants jointly and severally as punitive damages.
 
 
 21
 The appellants filed a motion for JNOV or a new trial or to alter the judgment or for remittitur alleging inter alia that they were denied their right to a trial by six jurors, because one of the jurors, Agnes Walker, demonstrated that she could not hear the evidence and because another juror, Louis Gouvas, failed to disclose that his son had been given a disputed speeding ticket by the Kentucky State Police.
 
 
 22
 The motion was supported by the affidavits of Ruth Meredith, a juror, and Eddie Lovelace, the attorney for David Bunch. In her affidavit Meredith made the following assertion concerning juror Gouvas:
 
 
 23
 I was one of the jurors who served in the above action. Juror Gouvas discussed with us at one of the breaks that he had a son who had (according to him) been wrongfully ticketed by the State Police for speeding. He also discussed at length the problems that a family member had with a conservation officer and that they were going to attempt to get that case re-opened. Juror Gouvas argued long and hard for plaintiff, Helm. He acted more as an advocate than as a fair and impartial juror.
 
 
 24
 Lovelace made the following assertion concerning juror Walker:
 
 
 25
 At the conclusion of the evidence, counsel for defendants requested that the jury be polled. The Court asked Juror Walker if the verdict was her verdict in a voice, aided by the microphone system, that was loud and clear enough to be heard all over the Courtroom. Juror Walker gave no response. At that time, the Court raised its voice and again inquired of Juror Walker. Again, Juror Walker made no verbal or other sign that she had heard the Court. Finally, the juror seated next to Juror Walker cupped her hands and asked Juror Walker, by speaking through her cupped hands directly into the left ear of Mrs. Walker, if that was her verdict. Finally, Juror Walker responded.
 
 
 26
 Helm responded to appellants' motions and presented the affidavit of juror Walker who asserted that "she heard all of the testimony in the case and all the other proceedings that took place in the trial."
 
 
 27
 The district court found no merit in appellants' arguments with the exception of their argument concerning the two jurors. After briefing, the court ordered a hearing concerning Gouvas' alleged withholding of information and found that juror Walker was competent to serve on the jury. The hearing was never held, however, for on December 23, 1987, the court denied the motion for a new trial based on juror misconduct. The court relied on Tanner v. United States, 107 S.Ct. 2739 (1987).
 
 
 28
 Appellants timely appealed. Appellant Bunch and Pierce filed separate briefs. Bunch argues that the court erred in (a) answering the jury's questions concerning attorney's fees, (b) its interrogatory concerning punitive damages which did not allow for a determination of punitive damages on an individual basis for each defendant, (c) failing to hold an evidentiary hearing concerning jurors Gouvas and Walker, (d) allowing Wilson to testify when his name was not on the witness list, and (e) that Meredith's affidavit showed juror misconduct in arriving at their verdict. Pierce raises the arguments concerning the two jurors and the punitive damages interrogatory and also argues that the court erred in (f) excluding evidence of prior acts of misconduct by appellee, and (g) allowing appellee to testify concerning his medical problems as a result of his injuries.
 
 II.
 A.
 
 29
 Appellant Bunch argues that his due process rights and his right to a jury trial were violated when the district court provided the jury with information concerning the awarding of attorney's fees in civil rights actions.[3] Specifically, he argues that the district court erroneously interjected a factor into the jury's deliberations which was outside the scope of their function.
 
 
 30
 Appellee argues that the decision to answer the jury's question was within the discretion of the district court and that the fact that the jury asked the question showed that the issue had already been interjected into their deliberations. Finally, he asserts that the court's instruction acted in the appellant's favor, because it preempted the jury from "hiking up" the award to cover attorney's fees.
 
 Initially, we note the general rule that
 
 31
 the court may, at the request of the jury, give them further instructions after they have retired to deliberate, since the interests of justice require that the jury have full understanding of the case, and the court may, without the consent of counsel, recall the jury and give additional instructions although but one juryman requests them.
 
 
 32
 89 C.J.S. Trial Sec. 477 (1955) (footnotes omitted).
 
 
 33
 The basis of appellant's argument is that telling the jury that attorney's fees would be awarded to the prevaling party would make them less inclined to find for the defendants because they knew that such a finding would make the plaintiff liable for attorney's fees and costs.
 
 
 34
 Under the general rule, the court has discretion to answer the questions of the jury to give the jury a "full understanding of the case." While it may have been wiser for the district court to not answer the jury's question, the fact that their question indicated that they were already figuring attorney's fees into their damages calculus provides support for the district court's action, since he was attempting to give them a clear understanding of their function at the damages stage. This fact also weakens appellant's prejudice argument.
 
 
 35
 Given the nature of the questions and the discretion of the trial court, we do not believe the district court erred in answering the jury's questions.
 
 B.
 
 36
 Both appellants argue that the court committed plain error in submitting interrogatory II (b) and (c) to the jury, since the wording of the interrogatory did not allow for an individualized assessment of punitive damages.[4]
 
 
 37
 In exceptional circumstances, ... appellate courts, in the public interest may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.
 
 
 38
 Rodgers v. Fisher Body Div., General Motors, 739 F.2d 1102, 1106 (6th Cir.1984) (quoting United States v. Atkinson, 297 U.S. 157 (1936)), cert. denied, 470 U.S. 1054 (1985). Plain error is defined as an egregious error, one that leads to a miscarriage of justice. United States v. Busacca, 863 F.2d 433, 435 (6th Cir.1988) (quoting United States v. Young, 470 U.S. 1, 15-16 (1985)).
 
 
 39
 Appellants argue that the interrogatory concerning punitive damages should have been styled like the interrogatory for compensatory damages, which allowed for an individual assessment of liability. They hypothesize that the jury may have awarded damages against less than all of the defendants if they were presented with the other style of interrogatory.[5]
 
 
 40
 The premise behind the appellants' argument is faulty. They presume that the jury might have believed that less than all of them acted maliciously thereby warranting punitive damages. This premise is defeated by the interrogatory itself which asked the jury if the defendants acted in a malicious manner. To answer this question in the affirmative, as the jury did, it must have found that all of the defendants acted maliciously. Therefore, the appellants were not prejudiced in the way that they assert. Rather, the only prejudice they may have suffered was that they must determine how to apportion the damages among themselves. We agree with the appellee that the use of this interrogatory did not amount to a miscarriage of justice.
 
 C.
 
 41
 Appellants argue that the district court erred in not granting a new trial due to juror misconduct and bias. They base this argument on juror Gouvas' concealment of his displeasure over a traffic ticket issued to his son and the fact the juror Meredith stated that Gouvas acted like an advocate during deliberations. The district court denied the motion for a new trial finding alternatively that the allegations against Gouvas did not amount to juror misconduct and that even if they did, an inquiry into the matter was precluded by Tanner v. United States, 107 S.Ct. 2739 (1987).
 
 
 42
 In Tanner, the Supreme Court considered the admissibility of juror testimony concerning alcohol and drug abuse by jurors. In determining, under the facts of that case, that such testimony was inadmissible, the Court considered Federal Rule of Evidence 606(b), which reads as follows:
 
 
 43
 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
 
 
 44
 Fed.R.Evid. 606(b) (emphasis added). "Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." Tanner, 107 S.Ct. at 2748. In Tanner, the Court noted the policy behind the rule.
 
 
 45
 There is little doubt that post-verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of post verdict scrutiny of juror conduct.
 
 
 46
 Tanner, 107 S.Ct. at 2747-49 (citations omitted). This circuit has also elaborated on the purposes behind the rule. "The rule ensures that jurors will not feel constrained in their deliberations for fear of later scrutiny by others. Further, it guarantees that jurors cannot manipulate the system when their views are in the minority by repudiating an earlier verdict and obtaining a mistrial." In Re Beverly Hills Fire Litigation, 695 F.2d 207, 213 (6th Cir.1982) (footnote omitted), cert. denied, 461 U.S. 929 (1983).
 
 
 47
 In the instant case, under Rule 606(b), the only way Juror Meredith's testimony would be admissible would be if it related to extraneous prejudicial information. Meredith's assertions concerning Gouvas' behavior in the jury room, i.e. "He acted more as an advocate than as a fair and impartial juror", is clearly testimony concerning internal matters that is precluded by the rule.
 
 
 48
 Appellants also argue that Gouvas' statements concerning his experiences with the police are analagous to extraneous prejudicial influences.[6] This information was not extraneous material, but rather encompasses the experiences and attitudes of juror Gouvas that he brought with him to the jury room. To allow an inquiry into such matters would abrogate the rule. This principle was recognized by the Fifth Circuit in United States v. McKinney, 429 F.2d 1019, 1022-23 (5th Cir.1970), cert. denied, 401 U.S. 922 (1971).
 
 
 49
 All must recognize, of course, that a complete sanitizing of the jury room is impossible. We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system, and we cannot and should not excommunicate them from jury deliberations.
 
 
 50
 Finally, appellants' assertion that Gouvas did not accurately answer the court's questions during voir dire because he did not tell the court of his son's traffic ticket is belied by the court's interrogatory to the jury, since the court expressly excluded traffic tickets from the distasteful or unfavorable experiences with the law about which it was inquiring to determine any bias.
 
 
 51
 Both appellants argue that the district court erred in not holding an evidentiary hearing to inquire into the competency of juror Agnes Walker who apparently has a hearing problem. The appellee presented the court with the affidavit of Walker below. Walker asserted that she heard all the testimony and proceedings at trial. Because of this, the court did not hold a hearing, stating that it could not find that she was incompetent to serve as a juror. Given this affidavit, we do not believe the district court erred in its ruling concerning juror Walker. See also Tanner, 107 S.Ct. at 2746 (noting that courts have wisely treated allegations of a juror's inability to hear or comprehend at trial as an internal matter).
 
 
 52
 Accordingly, we hold that the district court correctly denied appellants' motion for a new trial based on juror misconduct.
 
 D.
 
 53
 Bunch argues that the district court erred in allowing the testimony of Wilson, whose name was not included on appellee's pretrial list of witnesses. The exchange of witnesses was mandated by a pretrial order entered on February 9, 1984. The order specified that "In the absence of good cause no witness will be permitted to testify ... except upon compliance with the conditions of this order." The district court allowed Wilson to testify concerning the wound on Helm because Helm's counsel asserted that he was surprised by appellants' denial that they saw the wound.
 
 
 54
 "The decision to modify or enforce a pretrial order is discretionary with the trial court and will not be disturbed on appeal absent an abuse of discretion." Newman v. A.E. Stanley Mfg. Co., 648 F.2d 330, 333 (5th Cir.Unit B 1981). Given the fact that the order allowed for the admission of evidence where the order was not complied with on a showing of good cause, and the fact that appellee made a showing of good cause, i.e., surprise for failing to include Wilson in his pretrial list of witnesses, we hold that the district court did not abuse its discretion in allowing Wilson to testify.
 
 E.
 
 55
 Bunch asserts that a new trial should be granted because Juror Meredith's affidavit indicates juror misconduct in arriving at its verdict. Meredith claimed that the jury compromised on its verdict and that one juror divided up the questions so each one came out equal. Appellant's argument is meritless, since the Meredith affidavit represents testimony about internal matters which is clearly prohibited by Rule 606(b). See Hyde v. United States, 225 U.S. 347, 383-84 (1912) (juror testimony concerning compromise verdict should not be received); McDonald v. Pless, 238 U.S. 264, 269 (1915) (applying Hyde rule to an allegation of a quotient verdict).
 
 F.
 
 56
 Pierce argues that the district court erred in excluding evidence concerning appellee's prior contacts with police. The district court made the following ruling on this issue:
 
 
 57
 I think really 404 has to be looked at. Of course, that has to do with character evidence generally, and it says evidence of a person's character or trait of character is not admissible to prove that he acted in conformity therewith.... However, the Court believes that the officers may testify as to, as to other instances, experiences they have had directly rather than by reputation or character as such. If they have had run-ins personally with Mr. Helm in the past, they may testify to that. I'm not going to allow at this time any testimony or any proof about other instances of Mr. Helm with other officers or reputation about his belligerence.
 
 
 58
 Decisions concerning the admissibility of evidence under rule 404(b) rest in the sound discretion of the district court and will not be disturbed absent a showing of abuse of discretion. United States v. Cooper, 577 F.2d 1079, 1088 (6th Cir.), cert. denied, 439 U.S. 868 (1978). Other than a bare allegation that the failure to admit this evidence prevented the appellants from putting forth their case, which was based on a theory of self defense, the appellant does not demonstrate how the district court abused its discretion.
 
 
 59
 Upon review of the record, we do not believe the district court abused its discretion in limiting the introduction of bad acts evidence.
 
 G.
 
 60
 Finally, appellant Pierce argues that the court erred in allowing appellee to testify concerning his dizziness resulting from his injuries. He argues that the introduction of appellee's testimony without corroborating medical evidence was prejudicial in the award of damages. He argues that the testimony should not have been admitted, or that a qualifying instruction should have been given to the jury. Appellant relies on DeBuyser v. Walden, 255 S.W.2d 616 (Ky.Ct.App.1953) and asserts that the introduction of the evidence was prejudicial.
 
 
 61
 In DeBuyser, the court was faced with the issue of excessive damages. At trial, the plaintiff had complained of nervousness, loss of weight, soreness in his shoulder and back and a susceptibility to colds as a result of an accident. The court determined that without medical evidence connecting the symptoms to the accident, it could not assume that the connection existed. Id. at 618. The court went on to rule that the jury's award was excessive. The court did not address the admissibility of the plaintiff's testimony.
 
 
 62
 Appellee distinguishes DeBuyser by noting that nervousness is not commonly associated with most physical injuries, while dizziness is commonly associated with a blow to the head. Appellee also points out that appellant did not object to the testimony nor did he offer any qualifying instruction. Finally, appellee notes that the appellants were able to introduce medical evidence which contradicted appellee's testimony.
 
 
 63
 Appellant's argument is without merit. Appellant is essentially arguing that the evidence should not have been admitted under rule 403. However, since no objections were made at trial, this court's review is limited to a search for plain error. The appellant's prejudice argument is based on the assertion that the jury may have given great weight to Helm's testimony in awarding damages. This assertion is belied by the award itself, which was for $21,000 in compensatory damages. Furthermore, appellant was able to counter any damage caused by Helm's testimony by introducing his own medical evidence. Given the foregoing, we hold that the district court did not err in admitting the challenged testimony of appellee.
 
 
 64
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Larry Helm is deceased and this action is now being pursued by appellee James Logan Helm, the administrator of his estate
 
 
 [2]
 A breathalyzer test was performed on Helm at the jailhouse. His blood alcohol content was .17%. To be charged with driving under the influence, a reading of at least .10% is needed
 
 
 [3]
 Appellant does not argue that the court's answer to the jury's question was inaccurate
 
 
 [4]
 The appellants argue plain error because they did not object to the form of the interrogatories before their submission to the jury. See Fed.R.Civ.P. 51. Rodgers v. Fisher Body Div., General Motors, 739 F.2d 1102, 1106 (6th Cir.1984), cert. denied, 473 U.S. 1054 (1985)
 
 
 [5]
 The appellants do not argue that the court's interrogatory led to a shockingly large verdict thus distinguishing this case from Rodgers where the error in question was "obvious and it affected the fairness and integrity of the judicial process in that it was undoubtedly to some degree responsible for a shockingly large verdict." Rodgers, 739 F.2d at 1106
 
 
 [6]
 The appellants make much of the fact that these exchanges occurred during various recesses and not during deliberations. The Court noted in Tanner that the external/internal distinction is not based on whether the jury is in the jury room when the irregularity occurred. Tanner, 107 S.Ct. at 2746. It is clear, therefore, that the substance of the alleged extraneous matter not the setting where it is disclosed is determinative of the admissibility of testimony concerning the matter