884 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James A. MITCHELL, Jr., et al., Plaintiff-Appellant,
v.
ASSOCIATED BUILDING CONTRACTORS OF N.W. OHIO, INC., etc., &
Rudolph/Libbe, Inc. Defendant-Appellee.
 No. 88-3953.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1989.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a difficult case in which appellant, a black bricklayer, claims under Sec. 1981,[1] that several defendants, including appellee Rudolph/Libbe, Inc., a general contractor in the Toledo, Ohio area, discriminated against him. Appellant contends that Rudolph/Libbe generally hired only individuals who had worked for them previously and maintained a 13 percent maximum minority hiring quota. Therefore, appellant contends that appellee denied him employment on the basis of race.
 
 
 2
 This case also has a complex procedural history. A trial was held in which the jury awarded appellant $10,000 in compensatory damages and $200,000 in punitive damages. The district court granted appellee's j.n.o.v. motion on the issue of punitive damages, stating that the evidence did not support said award. Alternatively, the district court granted appellee's motion for a new trial in the event an appellate court reversed the court's granting of the j.n.o.v. motion. The district court also conditionally granted appellee's motion for a new trial; if appellant did not accept the court's remittitur on compensatory damages (from $10,000 to $1,504) within 30 days, the new trial motion would be granted. Appellant refused to accept the remittitur.
 
 
 3
 A new trial was held which resulted in a judgment for appellee. At this trial appellant sought to base his entire claim on the evolution and use of a quota system. The district court limited his proof to actions occurring within the six year statute of limitations, refused to give an instruction other than one modeled on the pattern of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), and denied his motion for j.n.o.v.
 
 
 4
 On appeal, appellant challenges the propriety of the reversal on punitive damages and the remittitur after the first trial, and the propriety of the denial of several motions, including one for j.n.o.v., during the second trial. We affirm. We hold first that it was proper for the district court to reverse the punitive damages award and seek a remittitur on the compensatory damage award.
 
 
 5
 The decision of the district court to grant a new trial based on the excessiveness of the damages or, alternatively, to request a plaintiff to file a remittitur, is reviewable only for abuse of discretion. Manning v. Altec, Inc., 488 F.2d 127, 123 (6th Cir.1973). "The test adopted by the court is that it will '... reverse the grant of a new trial for excessive verdict only where the quantum of damages found by the jury was clearly within "the maximum limit of a reasonable range." ' " Id. at 133 (quoting Taylor v. Washington Terminal Co., 409 F.2d 145, 149 (D.C.Cir.), cert. denied, 396 U.S. 835 (1969)) (emphasis in original); see also Smith v. John Swafford Furniture Co., 614 F.2d 552, 553 (6th Cir.1980) (same); Brewer v. Uniroyal, Inc., 498 F2d 973, 977-78 (6th Cir.1974) (same).[2]
 
 
 6
 In reviewing the record and the standard approved in our prior authority, we conclude that the district court did not abuse its discretion in granting a new trial, or effectuating a remittitur, because the size of the verdict was not supported by the evidence. There was insufficient evidence about damages caused by Rudolph/Libbe's failure to hire Mitchell, even assuming evidence that Rudolph/Libbe did discriminate as charged because of its proportionate use of minority employees. The evidence relating to emotional injury was extremely vague and "[t]his court has granted a greater degree of deference to the decision of the trial court where the remitted portion is not the subject of direct evidence but rather results from inference drawn from the facts in evidence." Smith, 614 F.2d at 554; see Manning, 488 F.2d at 133; see also Brewer v. Uniroyal, Inc., 498 F2d 973, 977-78 (6th Cir.1974) (reversing remittitur sought by district court). The $10,000 award, while not large, was not "clearly within a reasonable range,"[3] based on the record.
 
 
 7
 A prevailing plaintiff in a Sec. 1981 action may be eligible for "punitive damages in an appropriate case." Patterson v. McLean Credit Union, 109 S.Ct. 2363, 2375 n. 4 (1989). Punitive damages may be recovered "only under circumstances where the 'defendant's conduct is shown to be motivated by evil intent, or where it involves reckless or callous indifference to the federally protected rights of others.' " Beauford v. Sisters of Mercy-Province of Detroit, 816 F.2d 1104, 1108-09 (6th Cir.), cert. denied, 108 S.Ct. 259 (1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). The court stated further that "[t]he imposition of punitive damages in civil rights actions[, including Sec. 1981 actions,] has generally been limited to cases involving egregious conduct or a showing of willfulness or malice on the part of the defendant." Id. at 1109. See also Jackson v. Pool Mortgage Co., 868 F.2d 1178, 1181 (10th Cir.1989) (stating "the standard for punitive damages for discrimination in violation of civil rights is that the discrimination must have been 'malicious, willful and in gross disregard of [plaintiff's] rights' "); Stephens v. South Atlantic Canners, Inc., 848 F.2d 484, 489 (4th Cir.), cert. denied, 109 S.Ct. 564 (1988) ("Punitive damages are recoverable for conduct exhibiting malice, an evil motive, or recklessness or callous indifference to a federally protected right").
 
 
 8
 To determine whether the district court properly granted a motion for judgment notwithstanding the verdict (j.n.o.v.), the court must determine whether there was insufficient evidence in the record to present a question of fact for the jury's consideration. Morelock v. NCR Corp., 586 F.2d 1096, 1104 (6th Cir.1978), cert. denied, 441 U.S. 906 (1979). The question is one of law for the reviewing court to determine de novo. Id. at 1104-05. In considering whether the evidence is sufficient to support the verdict, the appellate court may neither weigh the evidence, pass on the credibility of the witnesses, nor substitute its judgment for that of the jury. Instead, the evidence must be viewed in the light most favorable to the nonmovant, drawing from the evidence all reasonable inferences in that party's favor. Id. at 1104. Granting a j.n.o.v. is improper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. Beauford, 816 F.2d at 1107.
 
 
 9
 Upon careful review of the evidence presented at the first trial, the district court properly determined that the evidence could not support imposition of punitive damages. Evidence of Rudolph/Libbe's hiring practices demonstrated, at worst, a hiring system based on utilization of previously employed individuals. Recognizing that such a system, with a predominantly white workforce, might perpetuate the predominantly white workforce, Rudolph/Libbe used a minority hiring goal of 13 percent on all of its hiring, for both federal and nonfederal projects. Mitchell never once alleged or proved that less qualified white persons, or persons with a lesser connection to Rudolph/Libbe, were hired over him. The proportion established was higher than the proportion of minority bricklayers in the Toledo area. There was no showing of egregious conduct or malice which would permit the award of punitive damages.
 
 
 10
 We also hold that the district court properly handled the motions challenged from the second trial. Appellant contends that the district court erred in not granting his motion for j.n.o.v. following the second trial. He argues that the evidence was unrebutted that Rudolph/Libbe, through its alleged quota system, denied him employment simply because he was black. Rudolph/Libbe has denied consistently that it used an illegal quota system; witnesses testified that minorities were hired from time to time despite Rudolph/Libbe's efforts to maintain a minimum goal of approximately thirteen percent minority workers. Other circumstantial evidence regarding Rudolph/Libbe's minority recruitment and practices rebutted assertions of intentional discrimination; therefore there was sufficient evidence to support the verdict in the second trial.
 
 
 11
 It is clear that Rudolph/Libbe used no affirmative action plan which set maximum quotas for blacks or other racial minorities.[4] Rudolph/Libbe representatives testified that it hired blacks and minorities in excess of its minority goals. Simply because it monitored its minority workforce, in order to participate in federal and government projects, does not indicate use of a "maximum" quota. Rudolph/Libbe produced a great deal of evidence to show that appellant was dismissed because there was no work available or that he was not hired because there were no present openings.
 
 
 12
 With respect to the verdict in the second trial, Rudolph/Libbe is entitled to have the evidence construed in the light most favorable to it, including all reasonable inferences. That evidence and those inferences are sufficient to support the jury resolution.
 
 
 13
 Appellant further contends that the district court's denial of his request for instructions on direct discrimination was error. The requested instructions were not significantly different from those given and the district court was not in error in rejecting them. In effect, appellant sought instructions that argued his facts for him. Defendant-appellee was entitled to instructions that stated that it would not be liable if appellant was not hired for "legitimate nondiscriminatory reasons." See Price Waterhouse v. Hopkins, 109 S.Ct. 1775, 1786 (1989) (plurality opinion).
 
 
 14
 Appellant also contends that the district court erred in refusing to admit evidence of discrimination occurring prior to the six year statute of limitations bar date. See Mason v. Owens-Illinois, Inc., 517 F.2d 520, 522 (6th Cir.1975). The district court, however, allowed the admission of evidence relating to appellant's prior contacts with Rudolph/Libbe to show intent to discriminate. It simply held that such evidence could not support a damage award extending to a time before the limitations period.
 
 
 15
 Appellant could recover for injuries sustained after and including 1978, six years prior to his complaint's filing. At trial, the court allowed testimony of all of appellant's contacts with Rudolph/Libbe, namely his alleged first application and employment in 1975. It allowed testimony regarding the Toledo Area Affirmative Action Program for the Construction Industry[5] and Frederick Rudolph's role in its establishment. It refused admission of evidence relating to applications for employment between 1971 and 1978, although the record does not indicate that any applications were actually made by Mitchell. The court refused admission of evidence relating to the collective bargaining agreement (which allowed employers to hire up to 25% of employees from outside the local union for the alleged purpose of getting more white employees).
 
 
 16
 Appellant contends that he should have been able to admit evidence that Rudolph/Libbe instituted a quota system when no need for it existed. He alleges that this alleged practice constituted a "continuing violation" actionable even though some of the acts occurred outside the bar date, relying upon Held v. Gulf Oil Co., 684 F.2d 427 (6th Cir.1982). We find no error in the evidentiary rulings challenged. See Fed.R.Evid. 401. The district court made careful determinations about what evidence was relevant (weighted against prejudicial value) to provide ample background information to the trier of fact in this case.
 
 
 17
 The decision of the district court is accordingly AFFIRMED.
 
 
 
 [1]
 Section Sec. 1981 reads as follows:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, an exactions of every kind, and to no other.
 In Patterson v. McLean Credit Union, 109 S.Ct. 2363 (1989), the Court reaffirmed the principal that Sec. 1981 extends to discrimination by private parties. Id. at 2372 (reaffirming Runyon v. McCrary, 427 U.S. 160 (1976)). The Supreme Court also expounded on the scope and meaning of this civil rights statute. Section 1981 "forbid[s] discrimination in the 'mak[ing] and enforce[ment]' of contracts alone." Patterson, 109 S.Ct. at 2372.
 
 
 [2]
 Both appellant and appellee rely on the standards for the review of a jury award articulated in Rodgers v. Fisher Body Division, General Motors Corp., 739 F.2d 1102, 1109 (6th Cir.1984). This case states that the standard is " '[w]hether the award is so high as to shock the judicial conscience and constitute a denial of justice.' " Id. (quoting Zarcone v. Perry, 572 F.2d 52 92d Cir.1978). The standard announced in Rodgers relates only to appellate review of damage awards and not to appellate review of a district court's decision to grant a new trial (or a remittitur) on the basis of the size of the verdict. See Rodgers, 739 F.2d at 1109; 11 C. WRIGHT & A. MILLER, FED. PRAC. & PRO. Sec. 2820, at 135 (1973 & 1989 Supp.). Therefore, Rodgers is inapposite
 
 
 [3]
 Conditioning a new trial with a remittitur is not a concession by the trial court that the liability issue is unassailable so that the new trial must be on damages only. The practice of a new trial conditioned on rejection of a remittitur is well established. See 11 C. WRIGHT & A. MILLER, FED. PRAC. & PRO. Sec. 2815, at 100
 
 
 [4]
 The Supreme Court's recent public employer "quota" cases are not deemed to be relevant here. See City of Richmond v. J.A. Croson Co., 109 S.Ct. 706 (1989); Martin v. Wilks, 109 S.Ct. 2180 (1989)
 
 
 [5]
 The Toledo Area Affirmative Action Program for the Construction Industry (also known as "The Toledo Home Town Plan") was instituted by the Federal Department of Labor and in an effort to improve minority participation in the skilled construction trades